KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: kkaiser@utah.gov

*Attorney for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| YUNG-KAI LU,<br><br>      Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH; ROBERT BALDWIN; MIGUEL CHUAQUI; MICHAEL G. GOODRICH; LORI McDONALD; CHARLES PIELE; DONN SCHAEFER; CHALIMAR L. SWAIN and CHARLES A. WIGHT<br><br>      Defendants. | **MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**<br><br><br>Case No. 2:13-CV-00984-TC-BCW<br><br>Judge Tena Campbell<br>Magistrate Judge Brooke C. Wells |

## TABLE OF CONTENTS

MOTION .......................................................................................................................... 3

MEMORANDUM OF LAW ............................................................................................. 4

INTRODUCTION ............................................................................................................ 4

RELEVANT LEGAL FACTS .......................................................................................... 5

    Lu Is Accepted to Study at the University of Utah with Funding ............................... 5

    The Terms of the Contract ......................................................................................... 6

    Lu's Assistantship Is Not Renewed, and Lu Complains ............................................ 6

    Because Lu Was Not Enrolled, University Officials Reported Lu's Status, and Lu Was Deported .................................................................................................................. 7

    After His Deportation, Lu Filed an Ethics Complaint, Not a Notice of Claim .......... 7

LEGAL STANDARDS ..................................................................................................... 8

ARGUMENT .................................................................................................................. 10

    I.    Plaintiffs' Tort Claims Are Barred by the Governmental Immunity Act of Utah. ........ 10

        A.  Plaintiffs' Claims Are Covered by the Immunity Act. ............................... 10

        B.  Plaintiffs' Claims Against the Individual Defendants Are Barred. ............................ 11

        C.  Plaintiff's Tort Claims (¶¶ 16–28) Are Barred Because He Failed to File a Notice of Claim. .............................................................................................. 12

    II.   Plaintiff's Contract Claim Fails to State a Claim ......................................... 14

    III.  International Law Is Inapplicable. ................................................................... 17

        A.  The Taiwan Relations Act Is Inapplicable. ................................................. 17

        B.  The International Covenant of Civil and Political Rights Is Inapplicable. ................ 18

        C.  The International Covenant on Economic, Social and Cultural Rights Is Inapplicable. ........................................................................................... 19

CONCLUSION ............................................................................................................... 20

## <u>MOTION</u>

Defendants University of Utah, Robert Baldwin, Miguel Chuaqui, Michael Goodrich, Lori McDonald, Charles Piele, Donn Schaefer, Chalimar Swain and Charles Wight, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and DUCivR 7–1, respectfully move to dismiss Plaintiff's Second Amended Complaint with prejudice.  This court lacks subject-matter jurisdiction over the claims, because Plaintiff Yung-Kai Lu failed to file a timely Notice of Claim with the Attorney General in this case.  Furthermore, Plaintiff Lu's Claims are barred by the Governmental Immunity Act of Utah, and Plaintiff's Breach of Contract claim is barred by either the face of the agreement, or the Statute of Frauds, Utah Code § 25-5-3(1)(a). Accordingly, and for the reasons more fully described in the accompanying Memorandum of Law, Defendants request that the Court dismiss Plaintiff's Amended Complaint with prejudice.

## <u>MEMORANDUM OF LAW</u>

### INTRODUCTION

Plaintiff Yung-Kai Lu, a Taiwanese national, was a graduate student studying euphonium[1] at various institutions in the United States, until 2010, when he was recruited to come to the University of Utah to pursue a DMA[2] on the instrument.  He was offered a two-semester Teaching Assistant scholarship, which would cover for his tuition and give him a monetary stipend for the semesters.  The assistantship was renewable for up to three years.  Plaintiff Lu claims that, over the telephone, he was promised a full three-year assistantship, but the document he signed clearly stated that the position was for one school year.  When the University elected not to renew the assistantship, Lu complained, but did not re-register for

---

[1] The euphonium is a baritone-voiced, valved, conical-bore brass instrument.  It is an instrument primarily utilized in brass and symphonic wind bands, and as a solo instrument, rather than in orchestras.  It looks like this:



*See* Euphonium, http://en.wikipedia.org/Euphonium (last visited May 29, 2015) (attached hereto as Exhibit A).
[2] Doctor of Musical Arts.

classes.  As a result, he was out-of-status on his visa.  Utah employees reported his lack of status to immigration authorities, and Lu had to leave the country.

Lu now sues, alleging breach of contract, slander, and "dereliction of duty" against the University, his former adviser, and other University of Utah faculty, former administrators, and staff.  These claims should be dismissed.  Lu has failed to file a notice of claim, as required by the Governmental Immunity Act of Utah,[3] and therefore his tort claims are barred.  His breach of contract claim fails to state a claim because, by the plain terms of the contract, his assistantship was only for two semesters—one school year, and not three.

## RELEVANT LEGAL FACTS[4]

*Lu Is Accepted to Study at the University of Utah with Funding*

1. Plaintiff Yung-Kai Lu is a citizen of Taiwan, an area over which the People's Republic of China lays claim.  (Pl's. 2d Am. Compl. ¶ 4.)

2. Lu is a euphonium player and has studied the instrument in the United States.  He was studying elsewhere when he sought to pursue his doctoral degree in the instrument at the University of Utah.  (*Id.* ¶ 11.)  Lu was in contact with Professor Donn Schaefer, and through him, the University agreed to extend Lu an offer to enroll as a doctoral student in the University of Utah School of Music.  Through a Graduate Assistantship Contract,  the University also offered Lu a Teaching Assistantship, which would provide a tuition

---

[3] In 2015, the Legislature amended portions of the Governmental Immunity Act.  *See* S.B. 176, 2015 Utah Laws ch. 342, *available* at http://le.utah.gov/~2015/bills/static/SB0176.html. References in this brief will be to the version applicable to Lu's claims originating in 2011 and 2012.

[4] The facts asserted herein are derived from Lu's Second Amended Complaint and other relevant documents supporting Defendants' claim that jurisdiction is lacking, and are admitted for the purpose of this motion only.

waiver and a living stipend.  (*Id.* ¶ 11; Graduate Assistantship Contract, ("Lu Contract")

May 3, 2010, attached hereto as Exhibit B)  Lu agreed to the terms, signed the Contract,

and began his studies at the University of Utah in the fall semester of 2010. (*Id.*)

### The Terms of the Contract

3.   While the Contract recognized that the assistantship could be awarded for a maximum of

three years, the assistantship was, on its face, for a period of one year only.   The

University also held the discretion to select which applicants received assistantships each

year.  As stated in the Contract:

> [Y]ou have been awarded a graduate Teaching Assistantship for the 2010-
> 2011 academic year ….. This is a nine-month appointment beginning August 16,
> 2010, and ending May 15, 2011. …
> Teaching Assistant appointments are for one academic year at a time. The
> departmental policy is to select the best-qualified applicants in any given year.
> University policy limits Teaching Assistant appointments to two years for
> master's students and three years for doctoral students.

(Lu Contract, Ex. B.).

### Lu's Assistantship Is Not Renewed, and Lu Complains

4.   As Lu was nearing the completion of his first year of studies, the University informed

him that his assistantship—and the Contract—would not be renewed.  (Pl's. 2d Am.

Compl. ¶¶ 12, 13(a)–(b).)

5.   Thereafter, Lu protested the nonrenewal of the assistantship to Professor Robert Baldwin,

then the interim director of the School of Music; Lori McDonald, University of Utah

Dean of Students, and Charles Wight, former University of Utah Dean of Graduate

School.  (Pl's. 2d Am. Compl. ¶¶ 5, 13(b) –(c), 17, 18, 22.)  The decision not to renew

Lu's scholarship was not changed.  (*See generally id.*)

***Because Lu Was Not Enrolled, University Officials Reported Lu's Status, and Lu Was
Deported***

6. Because Lu did not receive his assistantship, and because he did not have the finances to
pay tuition, he did not enroll for the next term. This caused "visa issues." (Pl's. 2d Am.
Compl. ¶¶ 14, 21.) Lu did not transfer to another institution, and his visa was not
extended. (*Id.*)

7. Lu's status was reported to immigration authorities, and Dean McDonald provided
records for a hearing related to Lu's immigration status. (*Id.* ¶¶ 13(c), 23.) Lu was
deported. (*Id.* ¶ 14, 22.)

***After His Deportation, Lu Filed an Ethics Complaint, Not a Notice of Claim***

8. After Lu was deported, Lu filed an ethics complaint to the Internal Audit Department at
the University of Utah. (Pl.'s 2d Am. Compl. ¶¶ 5(e)(f), 25, 26.) Auditors Charles Piele
and Michael Goodrich were involved in the investigation and formulation of a report
related to the investigation. (*Id.* ¶¶ 25–26.) The report was completed December 7,
2012. (*See* Ethics Report, Dec. 7 2012 Re: Allegations by Yung-Kai Lu against the
School of Music, the Associate Dean of Students, and the Associate Director of the
International Center, a redacted copy of which[5] is attached hereto as Exhibit C.)

---

[5] Because the document is labeled "Confidential," and because no protective order referencing
the requirements of the Utah Government Records Access and Management Act is in place in
this case, the Report will be provided to the Court in a redacted form only. An unredacted
version is unnecessary, as the report is only being offered to show its existence, and that Lu's
complaint instigating the report is not a sufficient Notice of Claim as required by the
Governmental Immunity Act of Utah. Because the report is referenced in the Complaint, it may
be reviewed by the Court without converting Defendants' motion to dismiss into one for
summary judgment. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 103 F.3d 1381, 1384 (10th
Cir. 1997).

9. Lu has never filed a notice of claim with the Attorney General's Office for any claims whatsoever.  (Decl. of Peggy Wheeler-Estrada, ¶ 5, attached hereto as Exhibit D.)

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(b)(1) preserves a defendant's right to seek dismissal on the basis of the court's lack of subject-matter jurisdiction, and Rule 12(b)(6) permits the Defendants to seek dismissal when the Plaintiffs' complaint fails to state a claim.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).

Motions to dismiss for lack of subject-matter jurisdiction take two forms—"facial" attacks and "factual" attacks.  *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).  In a "facial" attack, the party attacks jurisdiction based on the allegations in the complaint, which the court must accept as true.  *Id.* (citations omitted).  In a "factual" attack, the defendant may provide other documents and affidavits, and the court is given "wide discretion" in reviewing those materials or other evidence, to determine any "disputed jurisdictional facts." *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995)).  The addition of these materials does not convert a motion to dismiss into a motion to summary judgment.  *Id.*

In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff.  *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).  But a claim survives only if "there is plausibility in the complaint."  *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Threadbare

recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient.  *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed.  *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).  This includes the actual contracts that are referred to in pleadings.  *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *Id.* at 1385; *accord Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 10, 104 P.3d 1226, 1231; *BMBT, LLC v. Miller*, 2014 UT App 64, ¶ 6, 332 P.3d 1172, 1174 (recognizing, under Utah law, that documents referred to in a complaint, such as contracts, are "fair game" for the Court to consider on a motion to dismiss).

**ARGUMENT**

Lu's Second Amended Complaint alleges breach of contract, slander, and "dereliction of duty" claims against the University of Utah and various professors, staff, and administrators of the institution.  These claims should be dismissed.

The tort claims, to the extent Lu states any claims, are barred because Lu failed to file a notice of claim as required by the Governmental Immunity Act of Utah, which applies to both the University and the individuals sued.

The contract claim fails because the face of the contract contradicts Lu's allegations—that he was entitled to an assistantship for three years.  And any statements made before or after signing the contract are not legally enforceable, either as parol evidence or as violative of the Utah Statute of Frauds.

Finally, Lu has mentioned two treaties and one federal statute related to Taiwan that he believes affects his claims.  But in this case, they have no effect, either because the treaties are not recognized in federal court, or because the law itself does not relate to the tort and contract claims at issue.

All claims should be dismissed with prejudice.

**I.  Plaintiffs' Tort Claims Are Barred by the Governmental Immunity Act of Utah.**

   *A.  Plaintiffs' Claims Are Covered by the Immunity Act.*

The Immunity Act of Utah, Utah Code Title 63G, chapter 7, "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority."  Utah Code Ann. § 63G-7-101.  The Immunity Act provides immunity "from suit for any injury that results

from the exercise of a governmental function." *Id.* § 63G-7-201(1). It applies to any acts that "occur[] during the performance of an employee's duties, with the scope of employment, or under color of authority…." Utah Code § 63G-7-202(3)(a).

There can be no question that the Immunity Act applies in this case, and that it applies to claims against all Defendants. The University of Utah is part of the State for purposes of the Act, and the individual defendants were all acting as employees of the University. Utah Code §§ 63G-7-102(2)(a), -102(9); *accord Kabwasa v. Univ. of Utah* 785 F. Supp. 1445, 1446–47 (D. Utah 1990) (applying a previous version of the Immunity Act to tort claims against the University and University of Utah employees, and dismissing because the plaintiff failed to properly file a notice of claim). The education of Mr. Lu, and the decision not to renew his scholarship, is undoubtedly a governmental function. Utah Code § 63G-7-104(4); *see DeBry v. Noble*, 889 P.2d 428, 434 (Utah 1995) (recognizing that, when the legislature enacted the definition of "governmental function" in a previous version of the Immunity Act, it "vastly expanded the scope of the term … and therefore the scope of governmental immunity by making all government acts subject to immunity…"). Therefore, the Immunity Act affords its protection to all Defendants.

### B. Plaintiffs' Claims Against the Individual Defendants Are Barred.

The Immunity Act bars claims against individuals for acts or omissions "that occur[] during the performance of an employee's duties, within the scope of employment." Utah Code § 63G-7-202(3)(a). Rather, suit against the State of Utah is the "plaintiff's exclusive remedy." *Id.* Although there are exceptions to this rule, *see id.* § 63G-7-202(3)(c), Lu has not pleaded that any exceptions apply, and none should apply. Lu's complaints are claims related to the

termination of his scholarship, and the reporting of his immigration status to the authorities. The Immunity Act bars these claims.

   C. *Plaintiff's Tort Claims (¶¶ 16–28) Are Barred Because He Failed to File a Notice of Claim.*

Plaintiffs' Tort Claims—the Slander and "dereliction of duty" claims contained in Paragraphs 16 through 28 of Plaintiffs' Amended Complaint—should be dismissed because Lu failed to file a Notice of Claim, as required by the Immunity Act.

To comply with the Immunity Act, a plaintiff must file a notice of claim, setting forth a statement of facts, nature of claims, damages, and the name of a governmental employee if applicable, within one year after the claim arises. Utah Code §§ 63G-7-401, -402. The Notice must be sent to the Office of the Attorney General. *See* Utah Code § 63G-7-401(2)(b)(ii)(E), (G), -401(5); *see also* Governmental Immunity Act Database, http://corporations.utah.gov/gia/index.html?Entity=1 (noting that notices of claim for all actions against the State of Utah, its Departments and Divisions, must be sent to Shelley Exeter, Administrative Assistant, of the Utah Attorney General's Office) (attached hereto as Exhibit E).

A plaintiff's failure to comply with the notice of claim provisions in the Immunity divests a district court with subject-matter jurisdiction over the claim. *Wheeler v. McPherson*, 2002 UT 16, ¶ 9, 40 P.3d 632, 635 (citations and quotations omitted). "Strict" compliance with the notice provision is required. *Id.* at ¶ 11, 40 P.3d at 635 (citations and quotations admitted); *see also Straley v. Halliday*, 2000 UT App 38, ¶ 16, 997 P.2d 338, 343 (dismissing a claim against an official when the first notice of claim did not specifically allege that the public official acted with malice, and the second curative notice of claim was untimely).

Mr. Lu did not file a notice of claim prior to filing suit.  (Wheeler-Estrada Decl., Ex. D at ¶ 5.)  The actions underlying his complaint all took place more than one year ago, in 2010 through 2012.  (*See* Pl.'s 2d Am. Compl. ¶¶ 13–28.)  Therefore, Lu's claims are barred, and they should be dismissed with prejudice.

In his Complaint, Lu alleges that he followed "the first legal procedure to file a notice of claim against Defendant University of Utah."  (Pl.'s 2d Am. Compl. ¶ 25.)  However, as is plain from the Complaint, this Notice would be insufficient.  Lu admits that he started a procedure through "said university's auditing system," and that a University of Utah Auditor responded and prepared a responsive report.  This request was not directed at the proper party, and as can be seen from the report of the complaint, does not include the requirements mandated by statute. (See Ethics Report, Exhibit C.).

Lu has failed to "strictly" comply with the notice of claim requirement, and therefore his tort claims must be dismissed.  *See, e.g.*, *Kabwasa*, 785 F. Supp. at 1448 (dismissing state law claims against both University of Utah and its employees for plaintiffs' failure to properly file a notice of claim);  *Suazo v. Salt Lake City Corp.*, 186 P.3d 340, 342–43, 2007 UT App 282, ¶¶ 9–13 (Utah Ct. App. 2007) (holding that plaintiff's failure to deliver a notice of claim to the proper party, even when the party was previously a proper recipient of the notice of claim, required dismissal of plaintiff's claims); *see also, e.g.*, *Shunk v. Utah*, 924 P.2d 879, 880–81 (Utah 1996) (holding, under previous version of the Governmental Immunity Act, that plaintiffs' notice directed to the State Office of Education was insufficient for suit against a school district). Because more than one year has passed since Lu's claims have arisen, any attempt to file a new notice of claim is untimely, and therefore, Lu's claims should be dismissed with prejudice.  Utah

13

Code § 63G-7-402 ("A claim … is barred unless notice of claim is filed … within one year after the claim arises regardless of whether or not the function giving rise to the claim is characterized as governmental."); *Yates v. Vernal Fam. Health Ctr.*, 617 P.2d 352, 354–55 (Utah 1980) (affirming dismissal, with prejudice, of claims against government entities when no notice of claim was filed within one year after the cause of action arose).

**II.     Plaintiff's Contract Claim Fails to State a Claim.**

Lu has also sued on an alleged breach of contract theory.  In particular, Lu alleges, he was promised a "graduate assistantship and a tuition scholarship sufficient in monetary value to support his participation in [his DFA] program for three years," which, according to Lu, "constituted a verbal and written contract."  (Pl.'s 2d Am. Compl. ¶ 11.)  The University terminated the assistantship after one year.  (*Id.* ¶ 12.)  Lu contends this constituted a breach of contract.  Though contract claims are generally exempt from the notice of claim requirement in the immunity act, *see* Utah Code § 63G-7-301(1)(b), the breach of contract claim should be dismissed because it fails to state a claim on its face.

The contract Lu signed was a one-school-year contract.  Its terms could not be more plain:

> **This is a nine-month appointment beginning August 16, 2010, and ending May 15, 2011.** …
>
> Your responsibility to the School of Music is specified in detail in the following paragraphs, but requires a commitment of an average of 20 hours of work per week, and completing no less than nine (9) credit hours per semester with a grade of B or higher for each course throughout your term as a Teaching Assistant. This assistantship carries a stipend of $11,500 and a full waiver of both in and out-of-state tuition.* You will receive $5,750 in the fall and $5,750 in the spring….

> **Teaching Assistant appointments are for one academic year at a time.** The departmental policy is to select the best-qualified applicants in any given year. University policy limits Teaching Assistant appointments to two years for master's students and three years for doctoral students.

(Lu Contract, Ex. B.).  The Contract was sent to Mr. Lu's address in Indiana, consistent with his allegations in the Complaint.  (Compare Lu Contract *with* Pl.'s 2d Am. Compl. ¶ 11.)  It required him to work 20 hours, take 9 credits, and achieve a B average, as Lu has alleged in the Complaint.  (*Id.*)  Lu signed this agreement. (*Id.*)  Though the Contract discusses the possibility of renewal, and mentions a three-year limit on appointments, nothing in the contract guarantees such a renewal.  In fact, the contract specifically states that the appointments "are for one academic year at a time" and that the School of Music has the discretion "to select the best-qualified applicants in any given year."  (*Id.*) The Contract is unambiguous and complete regarding the critical terms of his appointment.

Though Lu alleges that the Defendants provided pretextual bases for not renewing the contract (*see* Pl.'s 2d Am. Compl. ¶ 13), Lu does not allege that the University refused to honor the agreement from August 16, 2010 through May 15, 2011.  The reasons for nonrenewal have no relevance, since the contract was only for one school year.  Lu's breach of contract claim fails to state a claim, and should be dismissed.

Lu alleges that Professor Schaeffer "promised several times on the phone to Plaintiff" that the scholarship was for three years, and that the University's nonrenewal was actually a breach.  These allegations are legally insufficient to state a claim for two reasons.

First, because these alleged phone call promises were made prior to Lu signing the contract, they cannot be used to modify the terms of the agreement as written—the parol evidence rule bars their use in this way.  *Nelson v. Newman*, 583 P.2d 601, 602–03 (Utah 1978)

15

(recognizing and affirming the application of the rule to oral discussions made prior to the enactment of an integrated agreement); *Tangren Family Trust v. Tangren*, 182 P.3d 326, 331, 2008 UT 20, ¶¶ 15–17 (Utah 2008) (recognizing that parol evidence may not be used to directly contradict an explicit term in the written contract).

Second, if the alleged promises were made subsequent to, or were separate from, the written agreement, this oral "contract" would be barred by the statute of frauds. Utah law makes void "every agreement that by its terms is not to be performed within one year from the making of the agreement," unless the agreement is in writing, signed by the party against whom the contract is being enforced. Utah Code § 25-5-4(1)(a). This includes agreements "that could not possibly be performed within one year, without regard to the parties' intentions …." *Pasquin v. Pasquin*, 988 P.2d 1, 5, 1999 UT App 245, ¶ 15 (Utah Ct. App. 1999).

Lu's allegation is that the University was bound to give him a scholarship for three years, so long as he kept his grades up and performed his work, based on an "oral agreement and written contract." (Pl.'s 2d Am. Compl. ¶¶ 12–13.) But the written contract was only for one year, and any oral agreement for a three-year contract "could not possibly be performed in one year," and would thus be void under the statute of frauds. *Pasquin*, 988 P.2d at 5; *see also Orlob v. Wasatch Med. Mgmt.*, 124 P.3d 269, 275, 2005 UT App 430, ¶¶ 22–25 (Utah 2005) (recognizing that subsequent oral modification of the rate of a six-year commission period and ten-year noncompete was barred by the statute of frauds, because the agreement had "definite terms and a duration of more than a year").

The unambiguous terms of the clear contract were followed. The University gave Lu an assistantship and scholarship for one school year. They elected not to renew the contract. They

did not breach the contract when they chose to do so.  Lu's breach of contract allegations fail to state a claim, and Defendants are entitled to dismissal.

## III.    International Law Is Inapplicable.

In his complaint and subsequent filings, Lu mentions a statute and two treaties, apparently as additional bases for his cause of action.  He argues that the Taiwan Relations Act requires the Court to "apply international laws to Taiwan citizen…," that the International Covenant of Civil and Political Right and International Covenant on Economic, Social and Political Rights is "enforc[eable]" by the Court.  Except to recognize that Lu is a citizen of a foreign state, and thus may sue in federal court, these laws and treaties have no application here.

### A.  The Taiwan Relations Act Is Inapplicable.

The Taiwan Relations Act, 22 U.S.C. § 3301, et seq., was passed by Congress "in order to maintain a formal relationship with Taiwan" after the United States recognized and established diplomatic relations with the People's Republic of China.  *See Taiwan v. U.S. Dist. Ct. for the Northern Dist. of Cal.*, 128 F.3d 712, 714 (9th Cir. 1997); *Chairworks Taiwan Ltd. v. Candlertown Chairworks*, No. CIV. 1:98CV240, 1999 WL 33320961, at *3 (W.D.N.C. Mar. 19, 1999) (mem. & rec. not selected for publication) ("[President Carter was able to give China what it wanted—exclusive recognition by the United States as the true government of mainland China despite Taiwan's claim as the government in exile—and was also able to give Taiwan most of what it wanted—if not diplomatic recognition in name, all the benefits of recognition, including the ability to sell goods in the United States, enter into contracts to sell those goods, and enforce those contracts in a United States forum."), *report and recommendation adopted sub nom.*

*Chairworks Taiwan Ltd. v. Candlertown Chairworks, Inc*., No. 1:98CV240, 2001 WL 1018818 (W.D.N.C. May 12, 2001).[6]

Section 4(a) of the Act, 22 U.S.C. § 3303(a), states that "absence of diplomatic relations or recognition shall not affect the application of the laws of the United States with respect to Taiwan, and the laws of the United States shall apply with respect to Taiwan in the manner that the laws of the United States applied with respect to Taiwan prior to January 1, 1979." Further, "[t]he absence of diplomatic relations and recognition with respect to Taiwan shall not abrogate, infringe, modify, deny, or otherwise affect in any way any rights or obligations (including but not limited to those involving contracts, debts, or property interests of any kind) under the laws of the United States heretofore or hereafter acquired by or with respect to Taiwan." 22 U.S.C. § 3303(b)(3)(A).

While the Act stands for the proposition that Lu is a citizen of a foreign state for purposes of diversity jurisdiction, and is able to sue in federal court, *Chang v. Nw. Mem. Hosp.*, 506 F. Supp. 975, 977–78 (N.D. Ill. 1980), any applicability of the Act stops there. Plaintiff Lu's claims—breach of contract entered into on U.S. soil, for a scholarship at a U.S. institution, when Lu was in the United States, have no relation to the Act merely because Lu is Taiwanese.

   *B.  The International Covenant of Civil and Political Rights Is Inapplicable.*

The International Covenant on Civil and Political Rights is a treaty whose purpose is to "recogniz[e] the inherent dignity and of the equal and inalienable rights of all members of the human family," ICCPR, Preamble, *available at* http://www.ohchr.org/EN /ProfessionalInterest/Pages/CESCR.aspx (last visited May 29, 2015) (attached hereto as Exhibit

---

[6] Copies of all cases not published in an official reporter will be provided to the pro se plaintiff.

F).  It was ratified by the United States Senate on September 8, 1992, "with various reservations, understandings, and declarations." *Hain v. Gibson*, 287 F.3d 1224, 1243 (10th Cir. 2002) (quoting *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001)).  It includes in is provisions that "any person whose rights or freedoms as herein recognized are violated shall have an effective remedy, notwithstanding that the violation has been committed by persons acting in an official capacity." ICCPR, pt. II art 2.

However, the Covenant is not binding on federal courts.  A treaty is binding and enforceable in the federal courts if it is "self-executing," or if it is "non-self-executing" and legislation has been passed requiring its implementation.  *Hain*, 287 F.3d at 1243.  In passing the ICCPR, the Senate specifically declared that the Covenant were not "self-executing," and the Senate has never enacted implementing legislation for the treaty.  *Id.* (quoting *Buell v. Mitchell*, 274 F.3d 337, 372 (6th Cir. 2001)).

Lu does not mention how this Covenant applies to his contract and tort claims, but even if it does, for the reasons stated above, it cannot be applied by the Court, as it is a non-self-executing treaty that has never been implemented by Congress.

C.  *The International Covenant on Economic, Social and Cultural Rights[7] Is Inapplicable.*

Finally, The International Covenant on Economic, Social, and Cultural Rights, 993 U.N.T.S. 3, is inapplicable to Lu's claims because it has not been ratified by the United States.

_____

[7] Plaintiff names the International Covenant on Economic, Social, and *Political* Rights, but no such treaty exists.  Some sources appear to confuse the names, or suggest that the name of the treaty changed before finalization.  *See, e.g.*, Kerry E. McCarron, *The Schengen Convention as a Violation of International Law and the Need for Centralized Adjudication on the Validity of National and Multilateral Asylum Policies for Members of the United Nations,* Boston Coll. Int'l & Comp. L. Rev. 401, 418–19 & nn. 136, 138 (discussing the International Covenant on Economic, Social, and Cultural Rights, but referring to it by the name given by Lu).

*See UNTC,* *https://treaties.un.org/pages/viewdetails.aspx?chapter=4&lang=en&mtdsg_no=iv-3&src=treaty*; (attached hereto as Exhibit G); *see also Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 257 (2d Cir. 2003) (recognizing that the ICESCR has not been ratified by the United States).

## <u>CONCLUSION</u>

Yung-Kai Lu's tort complaints are barred by the Governmental Immunity Act.  His contract claims fail to state a claim, based on the complaint and the contract on which he sues. His Second Amended Complaint should be dismissed with prejudice.


DATED:  May 29, 2015

SEAN D. REYES
Utah Attorney General


/s/ Kyle J. Kaiser
KYLE J. KAISER
Assistant Utah Attorney General
Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on May 29, 2015, I electronically filed the foregoing, **MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**, using the Court's CM/ECF and I also certify that a true and correct copy of the foregoing was sent by electronic mail, to the following:

Yung-Kai Lu
2F NO 188 TING-CHO RD SEC 3
TAIPEI TAIWAN, CHINA 10091
yklueup@yahoo.com

             /s/ Cecilia Lesmes