KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: kkaiser@utah.gov

*Attorney for Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| YUNG-KAI LU,<br><br>                                Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH; ROBERT BALDWIN; MIGUEL CHUAQUI; MICHAEL G. GOODRICH; LORI McDONALD; CHARLES PIELE; DONN SCHAEFER; CHALIMAR L. SWAIN and CHARLES A. WIGHT<br><br>                              Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br><br>Case No. 2:13-CV-00984-TC-BCW<br><br>Judge Tena Campbell<br>Magistrate Judge Brooke C. Wells |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. iii

REPLY ARGUMENT ............................................................................................................ 1

    I.   Plaintiffs' Tort Claims Are Barred by the Governmental Immunity Act of Utah. .......... 1

        A.  The Governmental Immunity Act Is Constitutional and Not Preempted. .................... 1

        B.  Lu's Notices of Claim Were Improper or Untimely. ..................................................... 2

        C.  The Reformulation of the "Dereliction of Duty" Claims Do Not Survive. .................. 4

    II.  Lu's Citation to Criminal Statutes Fails to State a Claim. ............................................... 5

    III. Lu's Contract Claim Fails. .................................................................................................. 6

        A.  Lu Accepted the Terms of the Contract. ....................................................................... 6

        B.  Any Implied Contract Must Give Way to the Explicit Terms in the Contract. ........... 7

        C.  Enforcement of the Contract Does Not Violate the Covenant of Good Faith and Fair Dealing, or Any Implied Warranty. ............................................................................... 9

    IV. The Eleventh Amendment Bars Lu's Claims Against the University and Lu's New Claims of "Discrimination" Do Not Overcome It. ......................................................... 10

CONCLUSION .................................................................................................................... 11

# INTRODUCTION[1]

Governmental Immunity, and Eleventh Amendment Immunity, bar Plaintiff Yung-Kai Lu's lawsuit. Furthermore, Lu's breach of contract claims fail to state a claim, because the University of Utah and its employees performed on the promises agreed to—Lu attended one year of graduate school for free, with a stipend.

The legal arguments raised in Lu's Objections to the Motion to Dismiss (docs. 58 & 62) do not change the analysis. The Governmental Immunity Act of Utah is constitutional and applicable to the claims, and Lu's purported notices of claim were ineffective and insufficient under the Act. Lu's citations to criminal law and international law are inapplicable. His extracontractual evidence does not change the legal conclusion that the University did not breach

---

[1] This Memorandum is being filed pursuant to an order granting Defendants' Motion for Extension of Time (doc. 59). In the Motion, Counsel for Defendants represented to the Court that Plaintiff Lu had "granted Defendants two additional weeks to respond." (*Id.* at 2.) After the Motion was granted, Lu filed an objection to the extension, arguing that the motion "violate[d] the agreement and [made] the extension to four weeks." (Obj. to Proposed Ord. on Mot. for Extension of Time (doc. 61) at 1.)

Due to an apparent language barrier, there was some confusion regarding what extension was being requested, and what extension Lu offered his consent to. Lu filed his Objection to Defendants' Motion to Dismiss on July 13, 2015. Thus, Defendants' Reply Memorandum would have been due on July 30, 2015. DUCivR 7-1(b)(4)(A); Fed. R. Civ. P. 6(d). Counsel for Defendants requested an additional fourteen days to reply, making the reply due August 13, 2015. After much negotiation, Lu offered "two weeks extension from today in your time, including holidays." (E-mail correspondence (doc. 61-1) at 2). Counsel for the Undersigned misunderstood this to be consent for a two week extension, because, otherwise a two week extension "from today" (meaning July 16) would have made the reply memorandum due on July 30, its original due date, and the extension would be meaningless.

Counsel for Defendants takes his duty of candor to the Court seriously, particularly when dealing with a pro se party. He apologizes to the Court and Mr. Lu for the misunderstanding regarding the extension and will endeavor in the future to ensure that the opposing party has a clear understanding of any request being sought prior to filing an unopposed motion. Counsel notes, however, that, even if Mr. Lu had not agreed to the two-week extension, Counsel would have sought it, and Mr. Lu would not have been prejudiced by its granting.

his Graduate Assistantship Contract. His citation to federal civil rights law is without foundation.

No matter how many times, and in how many ways Lu attempts to move the target, Defendants' Motion strikes to the heart of Lu's Second Amended Complaint. For the reasons that follow, the Court should dismiss the complaint with prejudice.

**REPLY ARGUMENT**

I.  **Plaintiffs' Tort Claims Are Barred by the Governmental Immunity Act of Utah.**

   A. *The Governmental Immunity Act Is Constitutional and Not Preempted*.

   The Governmental Immunity Act of Utah, Utah Code tit. 63G ch. 7, [2] is constitutional, not preempted, and is binding authority is not compromised by international law. As a judge of this Court has noted, such an argument is "contrary to the well-established principles of federalism and state sovereignty." *Dettle v. Richfield City*, No. 2:13-cv-357, 2014 WL 4354424, at *8 (D. Utah Sept. 2, 2014) (mem. decision & ord. not selected for publication).[3] That is because the Governmental Immunity Act is an expression of the State of Utah's sovereign immunity, protected by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–98 (1984). As such, the "general concept of state tort immunity is not vulnerable to a constitutional challenge," and is not violative of either the Due Process or the Equal Protection Clauses. *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004).

   Lu's reliance on the Alien Tort Statute, 28 U.S.C.A. § 1350, is similarly unfounded. The statute is merely jurisdictional, providing the court the ability to hear claims that may otherwise fall under its purview. It does not abrogate sovereign immunity. *E.g.*, *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 354 (D.N.J. 2003) (collecting cases); *see also Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627 (1999) (setting forth the requirements of valid Congressional abrogation of the Eleventh Amendment).

---

[2] As noted in Defendants' original Motion, in 2015, the Legislature amended portions of the Governmental Immunity Act. *See* S.B. 176, 2015 Utah Laws ch. 342, *available at* http://le.utah.gov/~2015/bills/static/SB0176.html. Except as otherwise noted, references in this brief will be to the version applicable to Lu's claims originating in 2011 and 2012.

[3] All cases not selected for publication will be provided to the *pro se* plaintiff.

Finally, Lu cites to Article 7 of the Universal Declaration of Human Rights to challenge the constitutionality of the Act. Even if Article 7 was actionable in court, which it is not,[4] Lu fails to state a claim because the Governmental Immunity Act does not discriminate against any protected class. The Act applies to all claimants against the State, regardless of identity.

### B. Lu's Notices of Claim Were Improper or Untimely.

In response to the Defendants' arguments that Lu's tort claims are barred because he failed to file a Notice of Claim, Lu provides the Court with example documents purported to be Notices of Claim. Assuming these documents are genuine and were actually received by the intended recipients, they are insufficient or were untimely.

The Governmental Immunity Act requires that a plaintiff must file a notice of claim, setting forth a statement of facts, nature of claims, damages, and the name of a governmental employee if applicable, Utah Code §§ 63G-7-401, -402. A claimant *may not* file his cause of action in court until the claim is denied by the State's insurance carrier, or until 60 days after the notice of claim was filed, if the insurance carrier takes no action on the claim. *Id.* § 63G-7-403(1), (2). However, the claimant must file the action within one year after the denial of his claim. *Id.* § 63G-7-403(2)(b); *Monarrez v. Utah Dep't of Transp.*, 335 P.3d 913, 921, 2014 UT App 219, ¶ 28 (Utah Ct. App. 2014).

None of Lu's purported Notices of Claim falls within these requirements. Lu's original Complaint was received by the U.S. District Court on October 28, 2013, and filed October 31. (*See* doc. 3). No letter denying his claim was issued. For the complaint to be timely filed, then,

---

[4] *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) (recognizing that the Declaration "did not itself create obligations enforceable in the federal courts").

Lu would have had to file a proper notice of claim between August 29, 2012 and August 29, 2013. Utah Code § 63G-7-403.

- Lu's complaint to the state auditor, Exhibit 54011 (doc. 58-11) and subsequent communications (*see* doc. 58-8, 58-9, 58-10, 58-12, 58-13), while within the timeframe, do not qualify. Lu's complaint is not directed to the correct agency and does not state his intention to file suit. Nor does it put the agency on notice of a lawsuit. Nor does it mention damages.

- Lu's "Notice of Claim," Exhibit 54023 (doc. 58-23) is also insufficient. Assuming it was actually sent,[5] it is substantively insufficient. The notice does not even appear to be a demand for damages, but rather a request for aid in prosecuting his claims. Lu asks that the office "contact … me for further legal procedures" (*id.* at 1) and thanks the Attorney General for "read[ing] my report and wish [sic] to hear back from you for further information." (*Id.* at 5.) Further, the notice was untimely because it was filed at the same time that Lu's federal lawsuit was filed. (*See* doc. 3 at 4.) Thus, even assuming the October 2013 notice could be read as substantively compliant, Lu's lawsuit should be dismissed because he failed to wait for the notice of claim to be denied before he filed his lawsuit.

- Lu filed an additional notice of claim, received in June 2015, which comprised his amended complaint already filed in federal court. (Supplemental Decl. of Peggy Wheeler-Estrada, attached hereto as Exhibit I; *see also* Notice of Claim, attached hereto as Exhibit J.) This notice, filed four years after the events giving rise to his claim occurred, is clearly untimely.

Lu further attempts to employ an exception to the notice of claim rule, codified in Utah Code Section 63G-7-402(8) in 2014. The exception is inapplicable, both procedurally and

---

[5] The Office of the Attorney General has no record of receiving Exhibit 54023. (Decl. of Shelley Exeter, attached hereto as Exhibit H, ¶¶5–6.)

3

substantively. The provision was enacted in 2014, and made effective May 13, 2014, which was after all the relevant events arose and after Lu filed his lawsuit. *See* 2014 Utah Laws ch. 2010 (S.B. 267). Further, Lu has provided no proof that he filed a timely, proper notice of claim to *any* government entity. Nor has he provided any proof that he filed a proper notice of claim to the Attorney General within 30 days of the expiration of the one-year period, as required by the section. Utah Code § 63G-7-402(8) (2014).

A plaintiff's failure to strictly comply with the notice of claim provisions in the Immunity Act divests a district court with subject-matter jurisdiction over the claim. *Wheeler v. McPherson*, 2002 UT 16, ¶ 90, 40 P.3d 632, 635 (citations and quotations omitted). As described herein and in Defendants' original Motion, Lu has failed to do so, and the case should be dismissed.

### C. *The Reformulation of the "Dereliction of Duty" Claims Do Not Survive.*

In his Objections, Lu attempts to equate his "dereliction of duty" claims as "the violation of negligence." (Pl.'s Objs. at 13.) This reformulation does not save the claims.

Lu has sued the individual defendants for negligence. However, a suit against the governmental entity is the "exclusive remedy" for injury caused by an act or omission of an employee in the course of their employment. Utah Code Ann. § 63G-7-202(3)(a). The Immunity Act provides some exceptions to naming individuals as defendants. But claims of "simple negligence" themselves cannot stand against the employee. *Baker ex rel. Baker v. Angus*, 910 P.2d 427, 429 (Utah Ct. App. 1996).

Further, immunity for negligence is not waived if the injury "arises out of, in connection with, or results from," among other things, malicious prosecution, abuse of process, libel,

4

slander, failure to make an adequate inspection, institution of a judicial or administrative proceeding, or misrepresentation by an employee. Utah Code § 63G-7-301(5)(b), (d), (e), (f). So long as the plaintiff's injury is "proximately caused by immune conduct," the exceptions apply, and the University) is immune. *Barneck v. Utah Dep't of Transp.*, 2015 UT 50.

In this case, all of Lu's tort allegations are related to the exceptions listed above. Lu has a beef with Mr. Chauqui's allegedly slanderous comments; with the quality of Mr. Baldwin, Mr. Wight, Mr. Piele and Mr. Goodrich's investigations; with Ms. Swain's allegedly false statements; and with Ms. McDonald's statements which initiated and prosecuted an immigration action. This conduct actually and proximately caused harm to Lu. Utah has not waived immunity for negligence claims based on this conduct, and the claims should be dismissed.

## II. Lu's Citation to Criminal Statutes Fails to State a Claim.

Lu argues that his "criminal claims" are exempt from the notice of claim requirement in the Governmental Immunity Act. (*See* Pl.'s Objs. at 5 (citing 18 U.S.C. §§ 1001, 1506).) However, a private person does not have standing to bring, or to compel, criminal charges. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, (1973).

"Criminal offenses do not in and of themselves give rise to enforceable civil rights claims unless the criminal statutes in question create privately enforceable rights." *Steinberg v. Allen*, No. 91-8033, 979 F.2d 858, 1992 WL 339065, at * 1 (10th Cir. Nov. 17, 1992) (table op. not selected for publication). There is no private right of action under the specific criminal statutes that Lu has cited. *Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137–38 (4th Cir. 1987) (recognizing no private right of action under 18 U.S.C.A. § 1001); *Hamilton v. Reed*, No. 01–5546, 29 F. App'x 202, 204, 2002 WL 22032, at *1 (6th Cir. Jan. 2, 2002) (ord. not selected for

5

publication) (holding that a private plaintiff "possesses no private right of action against the defendants for alleged violations of 18 U.S.C. § … 1506 …."). Lu therefore cannot escape the requirements of the Governmental Immunity Act by attempting to re-plead his claims under the federal criminal laws.

**III.     Lu's Contract Claim Fails.**

For the reasons stated in Defendants' original Motion, Lu's claim of breach of contract fails. (Defs.' Mot. at 14–17.) The Graduate Assistant Contract promised Lu funding for one academic year. (Lu Contract, Ex. B to Defs.' Mot. (doc. 54-2).) While continuation of funding was mentioned, it was not guaranteed. (*See Id.*) Lu read the Contract and signed it. (*Id.*) The University provided Lu with funding for the 2010-2011 school year. (*E.g.*, Pl.'s 2d Am. Compl. ¶¶ 12.) It elected not to renew the Contract, and in doing so breached no provision of it.

Lu's various newly articulated theories to avoid dismissal of his contract claim—that there was no acceptance, that there was an implied-in-fact contract, or that the Contract was created in bad faith or violated an implied warranty—are insufficient to save the claim.

*A.     Lu Accepted the Terms of the Contract.*

Lu signed the letter indicating that he was being funded for one academic year. Nowhere in the writing is there any indication that he was promised a "graduate assistantship and a tuition scholarship sufficient in monetary value to support his participation in [his DFA] program for three years …." (Pl.'s 2d Am. Compl. ¶ 11.) Nowhere on the writing did Lu indicate that he did not agree to the term. Lu attended the University, took classes, performed in ensembles, and did not have to pay for the 2010-2011. Offer, acceptance, and consideration are all present. Lu's contention that the Contract is not complete because it references another document is misplaced.

The Contract does not incorporate any other documents, it merely states that he will receive more information about how the University works at a later time:

> You should be available for International Teaching Assistant orientation and training beginning August 6, 2010. **Information is enclosed, and you will also receive more details in your new student packet which we will send to you during the summer.**

(Ex. B. (doc 54-2).) And in fact, the Contract specifically notes that the terms of the graduate assistantship are contained in the Contract: "**Your responsibility to the School of Music is specified in detail in the following paragraphs….**" (*Id.* (emphasis added).) The other documents mentioned in the Contract[6] do not affect its critical terms. The context of the Contract shows that additional information about the university is outside the scope of the critical terms to which the parties have agreed, and Lu accepted the terms.

### B.   *Any Implied Contract Must Give Way to the Explicit Terms in the Contract.*

Lu argues that the alleged promises made by Professor Schaefer should be considered by the Court.[7] For the reasons stated in the Motion to Dismiss, those arguments are foreclosed

---

[6] Defendants provide the documents referred to or similar copies thereof, as Exhibits L, M, N, O, and P. The documents are not relevant. They merely include information that new students otherwise need to know—how to apply for health insurance, how to reserve a practice rooms were, when a graduate student's acceptance was binding, and the like. (*See* Decl. of Donn Schaefer attached hereto as Exhibit K.; *see also* Exs. L, M, N, O and P.) The "Tuition Benefit Program Guidelines," a document that applied to all Utah graduate students as a whole, elucidates the requirements for registering and maintaining grades to qualify for support. It says nothing about renewals. (*See* Ex. M.)

[7] Lu frames the issue as an implied-in-fact contract and also seeks relief under the doctrine of promissory estoppel. But an implied-in-fact contract exists only when there is no express contract covering the disputed issue. *See Parents Against Drunk Drivers v. Graystone Pines Homeowners Ass'n*, 789 P.2d 52, 57 (Utah Ct. App. 1990); *Lawrence v. Alexander*, No. 120906057, 2013 WL 5778544, at * 2 (Utah Dist. Ct. May 15, 2013) (mem. decision & ord. not selected for publication) (Toomey, J.) ("[A]contract may be implied-in-fact based upon the parties' conduct where there is no written contract."). A contract exists here, and therefore Lu cannot move forward on these theories.

either because the promises were made before the Contract was signed, and are barred by the parol evidence rule, or were made after the contract was signed, and are barred by the statute of frauds. (Defs.' Mot. at 15–17.)

But even if the parties had not articulated or agreed upon every term of Lu's employment as a teaching assistant or schooling as a grad student, the Court should still dismiss Lu's breach of contract claim because the terms alleged by Lu flatly contradict the written agreement. Utah law, in conformance with the Restatement (Second) of Contracts, recognizes that if the parties enter into a writing which constitutes a "final expression of one or more terms of an agreement," *Restatement (Second) of Contracts* § 209 (1981), then extrinsic evidence may not be used to contradict the terms of the writing. *Restatement (Second) of Contracts* § 215 (1981). Utah law includes the legal assumption that "a writing dealing with the *same subject* was intended by the parties to supersede *any prior or contemporaneous* agreements." *Novell, Inc. v. Canopy Grp., Inc.*, 92 P.3d 768, 772, 2004 UT App 162, ¶ 14 (Utah Ct. App. 2004) (second emphasis added). "[W]here a binding agreement exists, whether completely or partially integrated, evidence of prior or contemporaneous agreements or discussions is not admissible to contradict the terms of the written agreement." *Id.* at 773, 2004 UT App 162, at ¶ 15 (citations and quotations omitted).

Even if the various handbooks discussed other policies and procedures, the Graduate Assistant Contract contained the critical elements of scholarship amount, support amount, and, most importantly for this lawsuit, term of award. Lu cannot use alleged oral statements to contradict an express term of the Contract.

### C. Enforcement of the Contract Does Not Violate the Covenant of Good Faith and Fair Dealing, or Any Implied Warranty.

The implied covenant of good faith, and the provisions relating to implied warranties of goods, cited by Lu in his opposition, are inapplicable. (Pls.' Objs. at 16–17.) The Uniform Commercial Code, which Lu relies on, has been codified in the Utah Code Title 70A, and regulates commercial contracts. However, Chapter 2 of the UCC applies only to "transactions in goods." Utah Code § 70A-2-102. It does not apply to employment contracts. *See, e.g.*, Dimario v. Coppola, 10 F. Supp. 2d 213, 223 (E.D.N.Y. 1998) ("The contract … is one of employment of the plaintiff.… Thus, the Uniform Commercial Code has no bearing.").

Utah does recognize a covenant of good faith and fair dealing outside of the context of sales agreements. *E.g.*, Andalex Res., Inc. v. Myers, 871 P.2d 1041, 1048 (Utah Ct. App. 1994). "Under this covenant, the parties promise that they will not intentionally or purposely do anything that will destroy or injure the other party's right to receive the fruits of the contract." *Id.* "However, the covenant of good faith and fair dealing cannot be construed to establish new, independent rights or duties not agreed upon by the parties." *Id.*

Regardless of what Lu claims anyone knew about his financial position or his subjective expectation of funding, accepting Lu's argument would require the Court to establish new, independent rights not agreed upon in the Contract—namely, that Lu would have any contractual right to renewal of his tuition waiver and stipend. *Id.* The University operated in good faith by allowing Lu to take classes for free and receive a stipend during the year in which it said it would. There can be no violation of the implied covenant of good faith here.

9

## IV. The Eleventh Amendment Bars Lu's Claims Against the University and Lu's New Claims of "Discrimination" Do Not Overcome It.

If the Court determines that Lu can state a claim under either his tort or contract theories,[8] the case should still be dismissed pursuant Eleventh Amendment immunity. The Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. University of Utah is an arm of the State, and Lu is a Subject of a Foreign State. *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575 (10th Cir. 1996). As described above, the Governmental Immunity Act requires that the tort claims be brought against the University, and Lu's contract claims must also be brought against the entity. As such, they should be dismissed.

In his late-filed Addendum (doc. 62), Lu claims that immunity is abrogated pursuant to 42 U.S.C.A. § 1983. While that statute does allow civil rights suits to go forward in federal court against individuals, in their individual capacities, it is of no import here. The Statute does not abrogate immunity for the state tort and contract actions Lu has submitted in his Complaint. And while Lu repeats the word "discrimination" many times in his opposition, he has not stated a claim for violation of the Equal Protection clause, or detailed any facts to show how any Defendant discriminated against him based on his status or class. These bare allegations do not meet the *Twombly* standard, and Lu's complaint should be dismissed.

---

[8] Because both the Immunity Act and the Eleventh Amendment implicate the Court's subject-matter jurisdiction, the Court may address the Immunity Act issues before contemplating dismissal pursuant to the Eleventh Amendment. *E.g.*, *Williams v. Colo. Dep't of Transp.*, No. 09-cv-01959-PAB-MEH, 2010 WL 1781977, at * 1 n.3 (ord. not selected for publication).

## CONCLUSION

Yung-Kai Lu's tort complaints are barred by the Governmental Immunity Act and Eleventh Amendment Immunity. His contract claims fail to state a claim, based on the complaint and the contract on which he sues. His Second Amended Complaint should be dismissed with prejudice.

DATED: August 13, 2015

                                        SEAN D. REYES
                                        Utah Attorney General

                                        /s/ Kyle J. Kaiser
                                        KYLE J. KAISER
                                        Assistant Utah Attorney General
                                        Attorney for Defendants

# CERTIFICATE OF SERVICE

I certify that on August 13, 2015, I electronically filed the foregoing, **MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**, using the Court's CM/ECF and I also certify that a true and correct copy of the foregoing was sent by electronic mail, to the following:

Yung-Kai Lu
2F NO 188 TING-CHO RD SEC 3
TAIPEI TAIWAN, CHINA 10091
yklueup@yahoo.com

                                                                                            /s/ Collett Litchard