IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| YUNG-KAI LU,<br><br>    Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF UTAH; ROBERT BALDWIN; MIGUEL CHUAQUI; MICHAEL G. GOODRICH; LORI McDONALD; CHARLES PIELE; DONN SCHAEFER; CHALIMAR L. SWAIN; and CHARLES A. WIGHT,<br><br>    Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:13-cv-00984-TC-BCW |

Yung-Kai Lu brings this lawsuit against the University of Utah and its employees claiming the Defendants have not fulfilled their promises to provide him a scholarship to allow him to finish his doctoral studies at the University. The University and Mr. Yung-Kai entered a contract for him to be a teaching assistant while he pursued his studies for the 2010-2011 academic year. After the first year, the relationship soured, and the University declined to offer another year of scholarships, which led to this lawsuit. Mr. Yung-Kai argues that the Defendants slandered him, were "derelict" of their duties, and breached the contract. The Defendants have filed a motion to dismiss all claims against them.

The court has reviewed the Motion to Dismiss and the supporting Memorandum (ECF No. 54), Mr. Yung-Kai's responsive Objection to the Motion to Dismiss (ECF No. 58), and the Defendants' Reply (ECF No. 63). Under the Eleventh Amendment, the Governmental Immunity Act of Utah, the parol evidence rule, and the statute of frauds, Mr. Yung-Kai's causes of action cannot succeed. Therefore, the court DISMISSES Mr. Yung-Kai's complaint with prejudice.

## LEGAL STANDARD

When reviewing a motion to dismiss, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Thomas v. Kaven, 765 F.3d 1183, 1190 (10th Cir. 2014). But the court is not required to accept legal conclusions as true; a complaint "must offer specific factual allegations to support each claim." Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). If the Complaint is to survive dismissal it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In addition to the well-pleaded facts alleged in the Complaint, the court may base its decision on materials referred to by the Plaintiff that are central to the claim as long as the parties do not dispute the authenticity. Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 521 (10th Cir. 2013). If the court considers a document outside the pleadings, the court must "examine the document itself," rather than a party's description of it. Id. The court may also consider "argument contained in a memorandum in opposition to dismiss." County of Santa Fe v. Pub. Serv. Co., 311 F.3d 1031, 1035 (10th Cir. 2002).

## FACTUAL BACKGROUND

Mr. Yung-Kai is apparently a talented musician. He is a Taiwan citizen and has studied in the United States pursuing his masters and doctoral degrees. In July 2010, Mr. Yung-Kai was in Bloomington, Indiana, where he was pursuing a masters degree at the University of Indiana. Defendant Donn Schaefer, Associate Director of University of Utah's School of Music, called Mr. Yung-Kai several times promising him a graduate assistantship and a scholarship to support him for three years while he studied for a doctoral degree.

The University of Utah sent Mr. Yung-Kai a written document entitled "Graduate Assistantship Contract," which stated the policies of the assistantship and scholarship. It declared the offered assistantship was a nine-month appointment for the 2010–2011 academic year. It also explained that the appointments were for one academic year at a time, and that the University policy is to limit appointments to three years for doctoral students. The contract also required Mr. Yung-Kai to commit to working on average twenty hours per week, complete at least nine credit hours per semester with a grade of B or higher for each class. Mr. Yung-Kai agreed to those terms and signed it on May 18, 2010. Relying on this contract, Mr. Yung-Kai obtained an educational visa and moved to Salt Lake City in August 2010.

In an April 2011 meeting, Mr. Schaefer told Mr. Yung-Kai that the University of Utah had no money for Mr. Yung-Kai's assistantship and scholarship even though Mr. Schaefer had told Mr. Yung-Kai as late as August 2010 that all he "had to do to continue . . . was to maintain a GPA of at least 3.00." (2d Am. Compl. ¶ 13(a), ECF No. 12.) Mr. Schaefer knew about the lack of money as early as the fall of 2010, but withheld that information from Mr. Yung-Kai.

After that meeting, Mr. Yung-Kai contacted Defendant Robert Baldwin, Interim Director of Graduate Studies for the School of Music, to discuss the possibility of Mr. Yung-Kai not obtaining the next year's scholarship, but Mr. Baldwin did not schedule a meeting until after the School of Music's recital in May.  At that meeting in late May, Mr. Baldwin told Mr. Yung-Kai that the University could not offer him another assistantship or scholarship in part because of a report from Defendant Miguel Chauqui, Head of the Composition Department for the School of Music, that Mr. Yung-Kai had been rude to him.  Mr. Chauqui's statements were erroneous and hurt Mr. Yung-Kai's reputation.

In August 2011, Mr. Yung-Kai complained about how he had been treated to the Dean of the Graduate School, Defendant Charles A. Wight.  Mr. Wight promised an investigation and a formal response, but never fulfilled that promise.  Instead, the task was turned over to the Dean of Students, Defendant Lori McDonald.

Also in August, the director of the University's International Center, Defendant Chalimar L. Swain, who claimed to know immigration policies very well, met with Mr. Yung-Kai.  She tried to stop his request to transfer to another university, failed to give him the "necessary permission" for a visa extension, and demanded payment from him for future University of Utah services.  (Id. ¶ 21.)

In Mr. Yung-Kai's last meeting in August, Ms. McDonald told him that she was the final authority with whom he could discuss the situation or file a complaint.  After returning to Taiwan, Mr. Yung-Kai learned that he could have asked for an investigation from the University's Internal Audit Department.

Later, Ms. McDonald gave the U.S. Immigration Court and the U.S. Immigration and Customs Enforcement agency incorrect information.  She provided records stating that Mr. Yung-Kai had been dismissed from the University of North Texas, had been arrested by University of Utah police officers, was subject to restraining orders in Utah[1] and Indiana, and was a threat to public safety.  These records and statements hurt Mr. Yung-Kai's reputation and eventually led to his arrest, deportation to Taiwan, and the abandonment of his personal possessions.  And because of Ms. McDonald's reports, he has suffered emotional distress and can no longer pursue his doctoral studies or obtain a visa to return to the United States.

In October 2012, Mr. Yung-Kai filed a "notice of claim" through the University of Utah's Internal Audit Department.  (Id. ¶ 25.)  The auditors, Defendants Charles Piele and Michael G. Goodrich, investigated Mr. Yung-Kai's complaints and produced a report.  Mr. Yung-Kai learned from the report that Defendant David Cottle, an Associate Professor, had given Mr. Yung-Kai an unfavorable teaching report even though Mr. Yung-Kai had never before received such feedback.  Mr. Cottle's report presumably lead to the auditors' conclusion that Mr. Yung-Kai "had not performed his duties well enough."  (Id. ¶ 13(d).)  After Mr. Yung-Kai challenged the report within an appropriate and proper time, Mr. Piele and Mr. Goodrich told Mr. Yung-Kai that he could not challenge their report and that their investigation was closed.  Mr. Goodrich said the University "had already corrected the 'mistakes' . . . in a timely fashion."  (Id. ¶ 25.)  Mr. Yung-Kai's sent a letter in December to Mr. Goodrich seeking more assistance, and Mr. Goodrich failed to respond.

---

[1] The Complaint explains that Ms. McDonald's records were ambiguous about which state one of the restraining orders was issued in; the court presumes it was Utah.

Mr. Yung-Kai filed his original complaint with this court on October 31, 2013.

## ANALYSIS

In his Second Amended Complaint, Mr. Yung-Kai raises tort-based claims, a breach of contract claim, and other claims for relief under federal and international law. The Defendants filed a Motion to Dismiss, arguing that the Eleventh Amendment, the Utah Governmental Immunity Act, and other contract-related defenses preclude the court from awarding Mr. Yung-Kai the relief he seeks. In Mr. Yung-Kai's response to the Motion to Dismiss, he raises new legal theories to support or in place of his claims. The court will first address the Eleventh Amendment immunity issue and then address Mr. Yung-Kai's tort-based claims and contract-related claims along with his other theories for recovery.

**I.    Eleventh Amendment**

Under the Eleventh Amendment to the U.S. Constitution, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by . . . Citizens or Subjects of any Foreign State." Mr. Yung-Kai is a citizen of Taiwan, which is a foreign state. Utah is one of the United States. The University of Utah is an arm of the State of Utah and therefore gets Eleventh Amendment immunity from suit. Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 574–75 (10th Cir. 1996). And the State of Utah, or the University of Utah, has not waived its immunity. Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 299 (1990) ("[A] State does not waive its immunity by consenting to suit only in its own courts, but must specify its intention to subject itself to suit in federal court." (emphasis in original)) (citing Atascadero State Hosp. v. Sanlon, 473 U.S. 234, 241 (1985));  Lambertsen v. Utah Dep't of Corr., 922 F. Supp. 533, 538

(D. Utah 1995) ("The Utah Governmental Immunity Act does not operate to waive Utah's Eleventh Amendment immunity.").

There are ways a claimant can overcome Eleventh Amendment immunity, for example, when Congress has abrogated the immunity under Section 5 of the Fourteenth Amendment. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 78–80 (2000); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72–73 (1996). Mr. Yung-Kai argues that 42 U.S.C. § 1983 allows the court to hear his claims. But because § 1983 does not provide Mr. Yung-Kai a cause of action for violations of state tort and contract law, it does not help him. See e.g., Hudson v. Cnty. of Dutchess, 51 F. Supp. 3d 357, 370–71 (S.D.N.Y. 2014) ("[S]uch claims are . . . deficient [under Section 1983], because there is no violation of a federal constitutional or statutory right . . . .") (emphasis added). And although Mr. Yung-Kai discusses discrimination, he does not allege that the Defendants violated the Equal Protection clause. He does mention "discrimination under the Equal Employment Act," (Pl.'s Obj. Mot. Dismiss 17, ECF No. 58), and he probably meant the Equal Employment Opportunity Act of 1972, Pub. L. 92-261, 86 Stat. 111 (codified as amended in 42 U.S.C. §§ 2000e to 2000e-17). But he has not alleged facts or law that would allow the lawsuit in federal court. Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam) (holding that an employee seeking to pursue an Equal Employment Opportunity claim must exhaust her administrative remedies by filing a charge of discrimination with the [Equal Employment Opportunity Commission] before filing a civil claim, and citing identical holdings from other federal courts that have considered the issue).

Mr. Yung-Kai also could have tried to establish jurisdiction by raising the Alien Torts Statute, 28 U.S.C. § 1350, which was a statutory grant of jurisdiction to district courts by the

First Congress. But the Alien Torts Statute allows district courts to hear only causes of action "for alleged violations of international law norms that are 'specific, universal, and obligatory.'" Kiobel v. Royal Dutch Petrol. Co., 133 S. Ct. 1659, 1665 (2013) (quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 732 (2004)). Even if he had argued that the Alien Torts Statute overcame the Eleventh Amendment protection against suit, Mr. Yung-Kai has not provided causes of actions that are international-law norms. The Court in Sosa said, "we are persuaded that federal courts should not recognize private claims under federal common law for violations of any international law norm with less definite content and acceptance among civilized nations than the historical paradigms familiar when § 1350 was enacted." 542 U.S. at 732.

Mr. Yung-Kai cites to international treaties that might include such causes of action, but each of the treaties falls short of satisfying the jurisdiction standard discussed in Sosa. Mr. Yung-Kai contends the Defendants violated the Article 7 of the Declaration of Human Rights, G.A. Res. 217A(III), U.N. GAOR, 3d Sess., U.N. Doc. A/810 (1948), but the treaty is not binding law and does not meet the Sosa standard. Sosa, 542 U.S. at 734 ("[T]he Declaration does not of its own force impose obligations as a matter of international law."). Mr. Yung-Kai's references to the International Covenant on Civil and Political Rights, opened for signature Dec. 19, 1966, 999 U.N.T.S. 171, and the International Covenant on Economic, Social, and Cultural Rights, opened for signature Dec. 19, 1966, 993 U.N.T.S. 3, also falls short of the Sosa standard and so do not establish jurisdiction.

## II.   Tort-Based Claims

Mr. Yung-Kai alleges the Defendants either committed slander or a "dereliction of duty"[2] or both. In addition to Eleventh Amendment immunity, the University of Utah raises two defenses found within the Governmental Immunity Act of Utah, Utah Code Ann. §§ 63G-7-101 to -904 (LexisNexis 2014).

### A.   Utah Governmental Immunity Act

The Immunity Act generally states that "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." Id. § 63G-7-201(1).[3] The University of Utah is a governmental entity under the Immunity Act, and the individual Defendants are considered "Employees" of the University. Id. § 63G-7-102(2)(a), (3), (9); see also Kabwasa v. Univ. of Utah, 785 F. Supp. 1445, 1446–47 (D. Utah 1990) (applying the Utah Governmental Immunity Act in a lawsuit against the University of Utah and its employees). Under the Immunity Act, "an action under this chapter against a governmental entity for an injury caused by an act or omission that occurs during the performance of an employee's duties, within the scope of employment, or under color of authority is a plaintiff's exclusive remedy" except in certain circumstances that do not exist in this lawsuit. Utah Code Ann. § 63G-7-202(3)(a), (c).

The actions taken by the University of Utah and the individual employees were governmental functions that occurred within their scope of employment. A "governmental

---

[2] Mr. Yung-Kai has not provided the court with any authority that has recognized a cause of action called "dereliction of duty." The context of Mr. Yung-Kai's complaint implies that he is claiming the Defendants committed a negligent or intentional tort.

[3] Exceptions exist the governmental immunity, but none are applicable to the tort-based claims.

function" includes acts, and failures to act, performed by a department, employee, agent, or officer of a governmental entity. Id. § 63G-7-102(4). The Defendants' decision to refrain from offering another assistantship or scholarship, their communications and interactions about the decision and Mr. Yung-Kai's performance as an assistant, their participation in the U.S. Immigration Court proceedings, and the resulting audit were all governmental functions protected by the Immunity Act. The Act has exceptions from its waiver of sovereign immunity that make it more explicit. The exception from the waiver reads, in part:

> Immunity from suit of each governmental entity is not waived . . . if the injury arises out of, in connection with, or results from:
>     (a)    the exercise or performance, or the failure to exercise or perform, a discretionary function, whether or not the discretion is abused;
>     (b)    . . . abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, or violation of civil rights;
>     . . . .
>     (d)    a failure to make an inspection or by making an inadequate or negligent inspection;
>     (e)    the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause;
>     (f)    a misrepresentation by an employee whether or not it is negligent or intentional . . . .

Id. § 63G-7-301(5).

In certain circumstances, Utah waives its immunity, which removes the bar to suit, e.g., id. §§ 63G-7-202(3)(c), -301; but Mr. Yung-Kai has not pleaded and the court cannot see any exception that would apply other than Section 63G-7-301(1)(a) (waiving immunity from claims concerning contractual obligations).

    **B.**    **Notice of Claim**

In addition to the general bar against causes of action, the Immunity Act requires a claimant to submit a notice of claim before it can seek recovery from the State and its employees. Id. §§ 63G-7-401(3)(b)(ii)(E), (G), (5)(e), 402.  Although both Mr. Yung-Kai and the Defendants argue whether Mr. Yung-Kai has satisfied this requirement, because the Eleventh Amendment immunity and the Utah Governmental Immunity Act effectively bar Mr. Yung-Kai's tort-based causes of actions against all named Defendants, the court will refrain from analyzing this question any further.

**III.**    **Breach of Contract**

To recover for a breach of contract, a claimant must allege and establish: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." America W. Bank Members, L.C. v. State, 342 P.3d 224, 230 (Utah 2014) (quoting Bair v. Axiom Design, LLC, 20 P.3d 388, 392 (Utah 2001)).  University of Utah argues that it did not breach the obligations found in the written contract, and the court cannot place new obligations on the University because of the parol-evidence rule and the statute of frauds.

To decide whether a breach has occurred, the court looks to the contract, and, "if the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language." Benjamin v. Amica Mut. Ins. Co., 140 P.3d 1210, 1213 (Utah 2006) (quoting Saleh v. Farmers Ins. Exch., 133 P.3d 428, 434 (Utah 2006)).  The Graduate Assistantship Contract reads, in part:

> This is a nine-month appointment beginning August 16, 2010, and ending May 15, 2011.  You should be available for International Teaching Assistant orientation and training beginning August 6, 2010.  Information is enclosed, and you also will receive more

> details in your new student packet which we will send to you during the summer.
>
> Your responsibility to the School of Music is specified in detail in the following paragraphs, but requires a commitment of an average of 20 hours of work per week, and completing no less than nine (9) credit hours per semester with a grade of B or higher for each course throughout your term as a Teaching Assistant.
>
> This assistantship carries a stipend of $11,500 and a full waiver of both in and out-of-state tuition. You will receive $5,750 in the fall and $5,750 in the spring. . . .
>
> . . . . Teaching Assistant appointments are for one academic year at a time. The departmental policy is to select the best-qualified applicants in any given year. University policy limits Teaching Assistant appointments to two years for master's students and three years for doctoral students.

(Graduate Assistantship Contract, ECF No. 54-2 (footnote omitted)).[4] The contract allows the University to decide not to renew the contract after the 2010-2011 year. The ordinary meaning of the contract does not require the University to offer Mr. Yung-Kai an assistantship or a scholarship beyond the first year. No language limits the University's discretion. No language creates an express obligation to appoint Mr. Yung-Kai for a second year, and the discussion of

---

[4] When the court reviews a document central to the alleged cause of action that was referred to in the complaint, it interprets the document on its own and does not adopt one party's interpretation. Toone, 716 F.3d at 521.

Mr. Yung-Kai objected to the consideration of the contract because it referred to material outside of the document. (Pl.'s Obj. Mot. Dismiss 16, ECF No. 58.) He highlights the last sentence of the first paragraph discussing the enclosed information and the new-student packet that the University would send during the summer. The information and new-student packet would not plausibly provide more contractual obligations to either Mr. Yung-Kai or the University. And the next line states: "Your responsibility to the School of Music is specified in detail in the following paragraphs . . . ." (Graduate Assistantship Contract.) Notably, it does not say obligations would be included within the enclosed information or the new-student packet. Although there was no integration or merger clause, this one-page contract represented the final agreement between Mr. Yung-Kai and the University.

the University's self-imposed three-year limitation for doctoral studies does not create an implied contract obligation. There is no breach of contract here.

Mr. Yung-Kai argues that Mr. Schaefer's promise of a three-year scholarship binds the University. But the parol-evidence rule prevents the court from using Mr. Schaefer's promises that were made before the May 18, 2010 acceptance of the written contract. Young Living Essential Oils, LC v. Marin, 266 P.3d 814, 818 (Utah 2011) (citing Tangren Family Tr. v. Tangren, 182 P.3d 326, 330 (Utah 2008)). Similarly, under the statute of frauds, any conversations after May 18, 2010, in which a Defendant promised three years of scholarships cannot bind the University. Utah Code Ann. § 25-5-4(1)(a) (West, Westlaw through 2015 Gen. Sess.) (stating that "every agreement that by its terms is not to be performed within one year from the making of the agreement" is "void unless the agreement, or some note or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement"); Pasquin v. Pasquin, 988 P.2d 1, 4–6 (Utah Ct. App. 1999).

Mr. Schaefer's promises also do not support Mr. Yung-Kai's argument that the University breached an implied covenant of good faith and fair dealing. Utah law recognizes this type of implied covenant, but the covenant only creates a "duty that contracting parties 'refrain from action that will intentionally destroy or injure the other party's right to receive the fruits of the contract.'" Young Living, 266 P.3d at 816 (quoting Oakwood Vill. LLC v. Albertsons, Inc., 104 P.3d 1226, 1239 (Utah 2004)). No allegation states that the University destroyed or injured—or even tried to destroy or injure—Mr. Yung-Kai's ability to perform his contract obligations so he could not receive the fruits of the contract. Instead, the allegations show that the University declined to renew the scholarship for the subsequent academic year.

13

Mr. Yung-Kai's argument for promissory estoppel is also without merit. To recover under promissory estoppel, a party must have acted "in reasonable reliance on a promise made by a defendant." Youngblood v. Auto-Owners Ins. Co., 158 P.3d 1088, 1092 (Utah 2007). The determination of reasonableness is based on an objective standard, id. ¶ 34, and depends, in part, on how much a contract's "language is clear, direct, understandable to ordinary people." Id. ¶ 37. If Mr. Yung-Kai relied on the any of the Defendants' promises outside of the written contract, his reliance would have been unreasonable because the contract language is understandable and unambiguous.

**IV.   Other Claims for Relief**

Mr. Yung-Kai cites to other sources of law as bases for recovery for his damages, but they all fail to establish his right to relief. First, the Taiwan Relations Act, Pub. L. No. 96-8, 93 Stat. 14 (1979) (codified at 22 U.S.C. §§ 3301-3316 and other sections), provides no cause of action for Mr. Yung-Kai. The Act is an important agreement between the United States and Taiwan, but, it does not establish a right to relief for Mr. Yung-Kai.

Second, Mr. Yung-Kai cites to the International Covenant on Civil and Political Rights, supra, but it is not self-executing, and Congress has refrained from implementing the treaty. Hain v. Gibson, 287 F.3d 1224, 1243 (10th Cir. 2002). Assuming the treaty would apply to Mr. Yung-Kai's tort and contract claims, the treaty is still not binding in federal courts. Id. at 1243.

Finally, the International Covenant on Economic, Social and Cultural Rights, supra, has not yet been ratified by the United States. Flores v. S. Peru Copper Corp., 414 F.3d 233, 257–58 (2d Cir. 2003).

## **ORDER**

For the foregoing reasons, the court GRANTS the Motion to Dismiss (ECF No. 54) and DISMISSES the lawsuit with prejudice.  The clerk is ordered to close the case.

DATED this 7th day of October, 2015.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge